UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ABDOLJAVAD SHAHNIA, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> U.S. DEPARTMENT OF STATE, *et al.*, <br><br> *Defendants*. | Case No. 1:23-cv-2337 (ACR) |

### MEMORANDUM OPINION AND ORDER

    Plaintiffs are Iranian citizens who have applied for immigrant visas to move to the United States.  In April 2023, consular officers refused Plaintiffs' applications pending further administrative processing.  After four months without further developments, Plaintiffs joined the tidal wave of litigants in this District challenging visa-processing delays.  Understandable as Plaintiffs' frustration may be, their Complaint does not state any plausible claims.  The Court therefore dismisses this case without prejudice.

### I.   BACKGROUND

**A.   Legal Background**

    A U.S. citizen who wants to help a noncitizen relative obtain lawful permanent resident status may file an I-130 Petition for Alien Relative with U.S. Citizenship and Immigration Services (USCIS), a subagency of the Department of Homeland Security.  *See* 8 U.S.C. §§ 1151(b)(2)(A)(i), 1154; 8 C.F.R. § 204.1(a)(1).  If USCIS approves the petition and the beneficiary relative is outside the United States, the agency forwards the case to the State Department's National Visa Center (NVC) for processing.  8 C.F.R. § 204.2(a)(3).  The beneficiary relative must then submit additional paperwork, including a visa application form.

*See* 22 C.F.R. §§ 42.62-.63; 9 Foreign Affs. Manual § 504.1-2(b), https://fam.state.gov/FAM/ 09FAM/09FAM050401.html [https://perma.cc/B6J7-Q748]. Once the applicant (that is, the beneficiary relative) meets those requirements, the NVC coordinates with the appropriate consulate or embassy to schedule the applicant for a required consular interview. *See* 22 C.F.R. § 42.62; 9 Foreign Affs. Manual § 504.1-2(b)-(d).

Following the interview, the consular officer "must" generally either "issue the visa" or "refuse the visa."[1] 22 C.F.R. § 42.81(a). If the consular officer determines that she needs additional information to determine the applicant's eligibility, she may, "in accordance with [State] Department procedures," refuse the visa pending "further administrative processing." *Administrative Processing Information*, U.S. Dep't of State, https://travel.state.gov/content/ travel/en/us-visas/visa-information-resources/administrative-processing-information.html [https://perma.cc/WVZ8-GRT8].

### B. Factual Background

The Court takes the facts from Plaintiffs' Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011).

Plaintiff Abdoljavad Shahnia is an Iranian citizen, as is his stepson, co-Plaintiff Shahryar Shahnia. Dkt. 1 (Compl.) ¶ 9. Abdoljavad's wife, Arezou Akhyari, is a U.S. citizen.[2] *Id.* In June 2021, Akhyari filed an I-130 petition on Plaintiffs' behalf. *Id.* ¶ 10. In September 2021, USCIS approved the petition and forwarded it to the NVC. *Id.* ¶ 11; Dkt. 1-6 at 8. "Plaintiffs

---

[1] The consular officer must instead "discontinue granting the visa" if the applicant's country is subject to visa sanctions under 8 U.S.C. § 1253(d). 22 C.F.R. § 42.81(a). No party argues that such sanctions apply to Iran.

[2] The Complaint does not specify the relationship between Akhyari and Shahryar; Plaintiffs' Opposition refers to her as his stepmother. Dkt. 5 at 17.

submitted . . . online . . . [v]isa [a]pplication" forms in January 2022.³  Compl. ¶¶ 5, 12.

Consular officials at the U.S. Embassy in Yerevan, Armenia, interviewed Plaintiffs on April 6,

2023.  *Id.* ¶ 13.  "After the interview, Plaintiff[s] received a notice . . . that their [a]pplications

had been 'refused' . . . [pending further] administrative processing."  *Id.* ¶ 14.  Consular officials

requested that Plaintiffs provide additional information, which Plaintiffs submitted.⁴  *Id.* ¶ 15.

Plaintiffs have received no further "explanation or justification for the delay," which remains

ongoing.  *Id.* ¶ 16.

   C.  **Procedural Background**

  Plaintiffs filed this case against the U.S. Department of State and Secretary of State

Anthony J. Blinken in August 2023.  Compl.  Citing both the Administrative Procedure Act

(APA), 5 U.S.C. §§ 555(b), 706, and the Mandamus Act, 28 U.S.C. § 1361, the Complaint

asserts that the delay in in adjudicating Plaintiffs' applications is unreasonable and requests an

order requiring prompt adjudication.  Compl. ¶¶ 28-45; *id.* at 10.  Defendants moved to dismiss

the Complaint in October 2023.  Dkt. 4 (Mot.).

---

³ The parties oscillate between referring to a single "application" and to multiple "applications." *Compare, e.g.*, Compl. ¶ 12, *and* Dkt. 4 at 2 (singular), *with* Compl. ¶ 14, *and* Dkt. 4 at 9 (plural).  The Court's best reading of the filings is that, in State Department parlance, Plaintiffs each submitted an application, *see, e.g.*, Dkt. 5 at 1-2; *see also* 9 Foreign Affs. Manual § 504.1 (describing application process), and the Court therefore uses the plural.  This numerosity nit makes no substantive difference; the Court's conclusions would not change if Plaintiffs submitted only one joint application.

⁴ Plaintiffs do not state when they submitted this information.  *See* Compl. ¶ 15.  They cite an exhibit to the Complaint as "confirm[ing Defendants'] receipt" of the supplemental submissions, *id.*, but all the dates in that exhibit are from before April 2023, Dkt. 1-6 at 24-26, so it is hard to see how Plaintiffs could have submitted the listed documents in response to post-interview inquiries.  The Court does not dwell on this point, however, because even if Plaintiffs answered all follow-up questions on the day they interviewed, the delay still would not be unreasonable.

## II. LEGAL STANDARD

Defendants' Motion seeks dismissal both under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for failure to state a claim.

When a defendant moves to dismiss under Rule 12(b)(1), the plaintiff bears the burden of establishing jurisdiction. *E.g.*, *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Where, as here, "the defendant challenges only the legal sufficiency of the plaintiff's jurisdictional allegations," *Phoenix Consulting, Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting [the] plaintiff the benefit of all inferences that can be derived from the facts alleged," *Am. Nat'l Ins. Co.*, 642 F.3d at 1139 (cleaned up).

To avoid dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (cleaned up). To meet that standard, a plaintiff's allegations must support a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (cleaned up). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (cleaned up).

### III.     ANALYSIS

Defendants argue both that Plaintiffs have sued the wrong parties—and therefore lack standing—and that the Complaint does not state any plausible claims.[5] The Court rejects the first argument but agrees with the second.

### A.     Plaintiffs Have Sued Appropriate Defendants

Defendants contend that Plaintiffs lack standing—which requires, among other things, "that a favorable decision will likely redress" Plaintiffs' injuries, *City of Scottsdale v. FAA*, 37 F.4th 678, 679 (D.C. Cir. 2022) (cleaned up)—because "neither [Secretary Blinken nor the State Department] can favorably adjudicate an application for a visa." Mot. at 5. This Court, like many (though not all) others in this District, has previously rejected this argument, and it stands by that conclusion. *See Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *4 (D.D.C. Mar. 8, 2024); *see also, e.g.*, *Sharifymoghaddam v. Blinken*, No. 23-cv-1472, 2024 WL 939991, at *3 (D.D.C. Mar. 5, 2024). *But see Nusrat v. Blinken*, No. 21-cv-2801, 2022 WL 4103860, at *4 (D.D.C. Sept. 8, 2022) (finding no standing to sue Secretary Blinken). "[W]hile the Secretary of State has no legal authority to control which visa applications consular officers grant or deny, nothing precludes him from directing them to decide pending applications within a reasonable time," and an order requiring him to do so would likely redress Plaintiffs' injuries by

---

[5] Defendants also argue that the consular nonreviewability doctrine bars Plaintiffs' claims and that Defendants do not have any clear, nondiscretionary duty to act, as is necessary for a mandamus claim. Mot. at 6-17. The Court has previously explained why it need not address these arguments—neither of which implicates its Article III jurisdiction over this case—before dismissing a visa-delay case for failure to state a claim, *see Rashidian v. Garland*, No. 23-cv-1187, 2024 WL 1076810, at *5 & n.5 (D.D.C. Mar. 8, 2024), and sticks to that approach here. In addition, Defendants contend that the Court should treat their Motion as conceded because Plaintiffs' counsel filed the Opposition to the Motion roughly two weeks late. Dkt. 6 at 1-2; *see* LCvR 7(b); Dkts. 4, 5. The Court does not condone Plaintiffs' counsel's lack of diligence, but, since the Court will grant the Motion on the merits and Defendants have shown no prejudice from the late filing, the Court excuses this lapse.

ending the challenged delay. *Rashidian*, 2024 WL 1076810, at *4 (quoting *Khazaei v. Blinken*, No. 23-cv-1419, 2023 WL 6065095, at *4 (D.D.C. Sept. 18, 2023)). The same reasoning extends to the State Department, which, Defendants acknowledge, is "effectively . . . the same" party as Secretary Blinken in this context. Dkt. 6 at 2. Plaintiffs thus have standing to sue Defendants.

### B. Plaintiffs Have Not Stated Plausible Unreasonable-Delay Claims

The Court turns to the merits of Plaintiffs' unreasonable-delay claims under the APA and the Mandamus Act. "[T]he central question" under both statutes is "whether the agency's delay is so egregious as to warrant mandamus." *Barazandeh v. U.S. Dep't of State*, No. 23-cv-1581, 2024 WL 341166, at *6 (D.D.C. Jan. 30, 2024) (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)).

To answer that question, courts in this Circuit consider the six "*TRAC*" factors, drawn from the D.C. Circuit's decision in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70 (D.C. Cir. 1984): (1) "[T]he time agencies take to make decisions must be governed by a rule of reason"; (2) "where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason"; (3) "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake"; (4) "the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority"; (5) "the court should also take into account the nature and extent of the interests prejudiced by delay"; and (6) "the court need not find any impropriety lurking

6

behind agency lassitude in order to hold that agency action is unreasonably delayed." *Id.* at 80 (cleaned up). "These considerations are often grouped into four basic inquiries":

> First, is there any rhyme or reason—congressionally prescribed or otherwise—for an agency's delay (factors one and two)? Second, what are the consequences of delay if the Court does not compel the agency to act (factors three and five)? Third, how might forcing the agency to act thwart its ability to address other priorities (factor four)? Finally, is the delay intentional or due to any impropriety on the part of the agency (factor six)?

*Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

Conducting these four inquiries, the Court concludes that the *TRAC* factors do not plausibly point Plaintiffs' way, making dismissal appropriate. *See Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340-46 (D.C. Cir. 2023) (affirming dismissal of visa-delay case for failure to state claim based on *TRAC* factors).

### 1. *TRAC* factors one and two

The first two factors, which consider whether the agency is following a "rule of reason," "congressionally prescribed or otherwise," *Khazaei*, 2023 WL 6065095, at *6 (cleaned up), support dismissal. Plaintiffs concede that "there exists no . . . congressional mandate on the time frame [sic]" for adjudicating their applications. Dkt. 5 (Opp.) at 18. Thus, the question is whether Plaintiffs have plausibly alleged that there is no "rhyme or reason" behind the delay. *Khazaei*, 2023 WL 6065095, at *6 (cleaned up).

Plaintiffs have not done so. An agency "employs a rule of reason" when it processes immigration applications on a "first-in, first-out" basis, *Da Costa*, 80 F.4th at 340-41, and "[c]ourts in this jurisdiction often look to the length of delay as a rough yardstick to determine whether that 'first-in, first-out' rule is, in fact, being applied," *Khoshrou v. Blinken*, No. 22-cv-2859, 2023 WL 4930086, at *5 (D.D.C. Aug. 2, 2023); *accord, e.g.*, *Barazandeh*, 2024 WL

7

341166, at *8 ("Absent a congressionally supplied yardstick, courts typically turn to caselaw as a guideline." (cleaned up)).  Caselaw confirms that the delay here is neither unusual nor inconsistent with a rule of reason.  Visa processing inevitably "takes a baseline amount of time," and "courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Khazaei*, 2023 WL 6065095, at *6.  The delay in this case—roughly fifteen months since Plaintiffs' interviews[6]—is similar to or shorter than those that courts have found reasonable in similar cases.  *See, e.g.*, *Sharifymoghaddam*, 2024 WL 939991, at *5 (fifteen-month delay); *Barazandeh*, 2024 WL 341166, at *7-8 (twenty-month delay).  Since Plaintiffs cite nothing other than the length of the delay in support of their argument, their allegations do not support a reasonable inference that the agency is not processing applications in an orderly, rational way.  The first two *TRAC* factors favor Defendants.

        **2.**     ***TRAC* factor four**

The fourth factor, "the effect of expediting delayed action on agency activities of a higher or competing priority," *TRAC*, 750 F.2d at 80, "carries significant weight," *Barazandeh*, 2024 WL 341166, at *9, and cuts heavily in Defendants' favor.  The D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting [a party] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up).  Plaintiffs seek exactly this type of relief.  "Consular

---

[6] Courts disagree as to the details of how to calculate delay in cases like this one—for example, whether the relevant end date is the day of the case's filing or the day of the decision.  *See, e.g.*, *Dehkordi v. Bitter*, No. 22-cv-2470, 2023 WL 5651845, at *4 n.4 (D.D.C. Aug. 31, 2023).  The Court follows Plaintiffs' lead in treating the interview date as the start of the delay, *see, e.g.*, Opp. at 19; Dkt. 7 at 2, and assumes, favorably to Plaintiffs, that the delay runs through today.

processing capacity is . . . a zero-sum game, so granting [Plaintiffs] relief would necessarily mean additional delays for other applicants—many of whom undoubtedly face hardships of their own." *Ahmadi v. Scharpf*, No. 23-cv-953, 2024 WL 551542, at *6 (D.D.C. Feb. 12, 2024) (cleaned up); *accord Da Costa*, 80 F.4th at 343-44. "Any such reordering of the queue of applicants seeking adjudication would be inappropriate . . . because there would be no demonstrable net gain in visa processing at large." *Ahmadi*, 2024 WL 551542, at *6 (cleaned up); *accord Da Costa*, 80 F.4th at 343-44.

Plaintiffs respond that this analysis "assume[s] without any factual basis that . . . Plaintiffs' . . . [a]pplication[s are] not already at the front of the line or completely ignored by . . . Defendants." Opp. at 19 (cleaned up). But it is Plaintiffs' burden to allege sufficient facts to support a "reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Court has already explained why the length of the delay thus far, standing alone, cuts *against* Plaintiffs' claims, *see supra* Section III.B.1, and they cite nothing else in the Complaint showing that Defendants have deprioritized Plaintiffs' applications. The fourth *TRAC* factor "weighs against judicial intervention." *Da Costa*, 80 F.4th at 344.

### 3. *TRAC* factors three and five

*TRAC* factors three and five, which examine "the interests prejudiced by the delay," including the effect on "human health and welfare," *Da Costa*, 80 F.4th at 344 (quoting *TRAC*, 750 F.2d at 80), arguably favor Plaintiffs but are not enough to swing the balance. Plaintiffs allege that the delay "has caused them . . . significant, ongoing harm [because] they remain in legal limbo as to whether they [will] be reunited [with Ms. Akhyari] in the United States," Compl. ¶ 18, and courts in this District have concluded that similar allegations tilted these factors in other plaintiffs' favor, if only narrowly, *see, e.g.*, *Siddiqui v. Blinken*, 646 F. Supp. 3d 69, 77

(D.D.C. 2022) (finding that the third and fifth *TRAC* factors "slightly" favored a visa-delay plaintiff based on an allegation that the delay "'had a profound and negative impact' on his life"). *But see Da Costa*, 80 F.4th at 344-45 (concluding that these factors did not favor visa-delay plaintiffs absent harms beyond "the uncertainty that results any time an individual must continue to wait to secure a benefit"). But, while Plaintiffs' distress is understandable, "many others facing similar circumstances" are suffering the same harm. *Siddiqui*, 646 F. Supp. 3d at 77 (cleaned up). Without more unusual or urgent injuries, the third and fifth *TRAC* factors do not justify the Court's overruling the agency's priorities and moving Plaintiffs to the head of the line. *See Da Costa*, 80 F.4th at 344-45.

### 4. *TRAC* factor six

The sixth *TRAC* factor—whether "any impropriety lurk[s] behind agency lassitude," *TRAC*, 750 F.2d at 80 (cleaned up)—does not favor either side. Plaintiffs concede that they "have not alleged any impropriety." Opp. at 20. Since the Court "need not find any [impropriety] in order to hold that agency action is unreasonably delayed," this factor is neutral. *Da Costa*, 80 F.4th at 345-46 (cleaned up).

\*   \*   \*

The *TRAC* factors do not plausibly point Plaintiffs' way, and their unreasonable-delay claims therefore fail.

### IV. CONCLUSION AND ORDER

The Court sympathizes with Plaintiffs' situation. But their Complaint does not state plausible unreasonable-delay claims, and so the Court must dismiss this case.

For these reasons, the Court hereby **GRANTS** Defendants' Motion to Dismiss, Dkt. 4; **DISMISSES** Plaintiffs' Complaint, Dkt. 1, and this case without prejudice; and **DIRECTS** the Clerk of Court to close this case.

**SO ORDERED.**

This is a final appealable Order.  *See* Fed. R. App. P. 4(a).


Date:   June 27, 2024                                        _____
                                                                                                    ANA C. REYES
                                                                                                    United States District Judge